IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRYAN SEDLAK, JD-8439,)
    Petitioner,)
)
    v.) 2:15-CV-504
)
SUPT. SCI HOUTZDALE, et al.,)
    Respondents.)

REPORT and RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the petition of Bryan Sedlak for a writ of habeas corpus (ECF No.1) be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II. Report:

Bryan Sedlak, by his counsel has presented a petition for a writ of habeas corpus. Sedlak is presently serving a nineteen to thirty-eight year sentence following his conviction by a jury of third degree murder and abuse of a corpse. This sentence was imposed on August 10, 2009.[1] An appeal to the Superior Court was filed in which the issues presented were:

1. Was not the evidence insufficient as a matter of law to establish third degree murder and in particular to prove malice, where all of the prosecution evidence established only a killing in self-defense or a killing with an unreasonable belief in the need for self-defense?

2. Is not a new trial required, where the Commonwealth misrepresented the benefit it would provide to a cooperating witness?

3. Did not the lower court err in denying a continuance, where the court had previously granted a continuance of the trial date and, in reliance thereon, defense counsel stopped trial preparation?

4. Did not the lower court err in refusing to order *in camera* review of mental health records of a prosecution witness with demonstrated mental health

---

[1] See: Petition at ¶¶1-6.

1

problems, and thereafter by barring questioning of the witness regarding the same?

  5. Did not the lower court err in refusing to provide an accomplice "corrupt source" instruction, and in failing to properly respond to a jury question regarding malice?[2]

On April 7, 2011, the judgment of sentence was affirmed.[3] Leave to appeal was denied by the Pennsylvania Supreme Court on September 11, 2011.[4]

On August 16, 2012 a counseled post-conviction petition was filed[5] Relief was denied on October 12, 2012.[6] An appeal to the Superior Court was filed in which the issues presented were:

  I. Did the PCRA court err in denying Mr. Sedlak an evidentiary hearing on the issue of whether his appellate counsel was ineffective for failing to present to the Superior Court the blatant error of the trial court in refusing to clarify for the jury that a finding of guilt as to the abuse of corpse charge would not automatically defeat Mr. Sedlak's self-defense claim?

  II. Did the PCRA court err in denying Mr. Sedlak an evidentiary hearing on the issue of whether his trial counsel was ineffective for failing to interview, subpoena, and call Bill Robinson as a witness, where Mr. Robinson's testimony was relevant to Mr. Sedlak's state of mind shortly before the shooting and could have raised a reasonable doubt as to his guilt?

  III. Did the PCRA court err in denying Mr. Sedlak an evidentiary hearing on the issue of whether his trial counsel was ineffective for failing to call a ballistics expert to testify in support of the self-defense claim where such testimony may have created a reasonable doubt as to Mr. Sedlak's guilt?

  IV. Did the PCRA court err in denying Mr. Sedlak an evidentiary hearing on the issue of whether his trial counsel was ineffective for failing to call a ballistics expert to testify in support of the self-defense claim where such testimony may have created a reasonable doubt as to Mr. Sedlak's guilt?

  V. Did the PCRA court err in denying Mr. Sedlak an evidentiary hearing on the issue of whether trial counsel was ineffective for failing to request a jury instruction which explained that the evidence of the victim's violent propensities when using cocaine was critical to the self-defense claim?

---

[2] See: Exhibit 23 to the answer at pp.385.
[3] See: Exhibit 27 to the answer at pp.525-529.
[4] See: Exhibit 30 to the answer at p.603.
[5] See: Exhibit at pp. 604-819.
[6] See: Exhibit 33 at p. 839.

> VI. Did the PCRA court abuse its discretion in dismissing the post-conviction petition without a hearing where Mr. Sedlak met the eligibility requirements for relief under the PCRA, and presented genuine issues of material facts which if proven would entitle him to relief?[7]

On April 23, 2014, the denial of post-conviction relief was affirmed[8] and reconsideration/reargument were denied on March 4, 2014.[9] Leave to appeal was denied by the Pennsylvania Supreme Court on September 30, 2014.[10]

The instant counseled habeas corpus petition was filed on April 16 2015 and in it Sedlak contends he is entitled to relief based on the following contention:

> The conviction was obtained and sentence imposed in violation of the Fourteenth Amendment to the Constitution of the United States.
>
> The evidence consisting of Sedlak's testimony that he shot and killed Kenney in self-defense while Kenney was trying to rob Sedlak and fired shots at Sedlak plus the court's findings of fact that the physical evidence supported Sedlak's version of the offense establish actual innocence. The gateway claim of actual innocence based on the violation of due process which occurred when the trial court refused to instruct the jury that malice had to exist at the time of the shooting and that acts taken to get rid of the body could not be used to prove the malice component of murder.[11]

Counsel represents that while this issue was raised in the direct appeal it was not raised in the post-conviction proceedings.[12]

The factual background to this prosecution is set forth in the April 7, 2011 Memorandum of the Superior Court:

> Patrick Kenney, the victim, never returned home after leaving the house he shared with his parents on February 1, 2005. Kenney, a cocaine abuser, sought drugs from Sedlak who picked him up in his truck and took him to his house and business, a tanning salon, in the early morning hours of February 2. The two did cocaine throughout the morning; that afternoon Kenney met with another individual to buy more cocaine, arriving at the same location in Sedlak's car, with Sedlak driving. Sedlak and Kenney returned to Sedlak's house and went out that night in Kenney's vehicle, a white Escalade. After buying more drugs from another individual and consuming them, Kenney returned to Sedlak's tanning salon, where Sedlak shot and killed him.

---

[7] See: Exhibit 39 to the answer at p.891
[8] See: Exhibit 41 to the answer at pp.1003-1010.
[9] See: Exhibit 43 to the answer at p.1047.
[10] See: Exhibit 47 to the answer at p.1098.
[11] See: Petition at ¶12.
[12] Id. at ¶¶12(c) and 12(d).

3

Later on in the evening of the shooting, Sedlak showed up "wired out of his mind" at a local bar where he told Robert Hoover that he had shot and killed someone in his salon. Hoover accompanied Sedlak to the salon, where Hoover saw blood on the floor and walls and a dead body; he proceeded to watch Sedlak kick and jump on the body while yelling profanities. Sedlak asked Hoover to help him dispose of the victim's car; Hoover agreed and helped Sedlak move it to a different section of Pittsburgh. A week later, Sedlak told Hoover that he had gotten rid of the body by cutting it up, skinning it and putting it in sulfuric acid.

Hoover's brother, Scott, who was an acquaintance of Sedlak, testified at trial that his brother and the defendant were at his house on February 3. Scott stated that Sedlak told him that no one would help him get a body from his shop into his truck, and that Kenney "tried to rob him and [Sedlak] killed him first," and "[Kenney] came in and took [Sedlaks'] keys and demanded [Sedlak's] drugs and pulled a gun and [Sedlak] shot first, whatever, didn't kill him. [Sedlak] kept shooting until [Sedlak] killed him."

Sean Liput, Sedlak's lifelong friend, also testified that he was acquainted with the victim and knew that he drove a while Escalade and that Sedlak owned weapons and kept some in his salon. Liput testified that Sedlak showed him what appeared to be a body wrapped in a rug secured with duct tape and twine and asked him to dismember the body and dispose of it. Liput refused to participate further after carrying the body upstairs at the salon. Liput's testimony was offered pursuant to an agreement that he would not be prosecuted for his conduct in connection with the instant case and that the District Attorney would appear at his sentencing on two pending drug cases and advise the court that Liput had provided valuable testimony for the Commonwealth in this case.

At trial, a number of other acquaintances of the victim and Sedlak testified about their knowledge of the events of February 2 which culminated in the victim's death. Sedlak testified in his own defense, detailing how the victim was at his salon, using and demanding drugs and that when Sedlak refused to give the victim any more drugs, the victim pulled a gun on him and fired it. Sedlak testified that he fired back at the victim in self-defense. He stated that Robert Hoover helped him wrap the victim's body in carpet and remove it from his salon; he denied telling anyone that he had shot the victim multiple times. (transcript references omitted).[13]

The respondent contends that the instant petition is time barred. It is provided in 28 U.S.C. § 2244(d)(1) and (d)(2) that:

---

[13] See: April 7, 2001 Memorandum of the Superior Court at pp. 525-527 of the answer.

> (1) A 1-year period of limitation shall apply to the application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
> (A) The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

An untimely post-conviction petition is not "properly filed". Pace v. DiGulglielmo, 544 U.S. 408 (2005).

In the instant case, leave to appeal to the Pennsylvania Supreme Court was denied on September 11, 2011. Certiorari was not sought and Sedlak's conviction became final on December 10, 2011. Gonzalez v. Thaler, 132 S.Ct. 641 (2012). The effective date of the Antiterrorism and Effective Death Penalty Act which imposed the one year statute of limitations is April 24, 1996 and thus it is applicable here. Although timely, the petitioner did not seek post-conviction relief until August 16, 2012 or over eight months after his conviction became final. That petition was denied; the denial of post-conviction relief was affirmed by the Superior Court on April 23, 2014, and leave to appeal to the Pennsylvania Supreme Court was denied on September 30, 2014. The instant petition was filed on April 16, 2015. Thus, combining the eight month delay in initially seeking post-conviction relief with the six and a half month delay in seeking relief here, in excess of the one year period in which to seek relief has expired, and the petition here is time barred. While petitioner appears to concede this matter, he argues that he is entitled to equitable tolling of the statute of limitations on the basis of a showing of actual innocence.

In McQuiggan v. Perkins, 133 S.Ct. 1924, 1928 (2013), the Court wrote:

> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar… or… expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare:" [A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." (internal citations omitted).

The showing of "actual innocence" is an extremely high standard to meet and must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error," Schlup v. Delo, 513 U.S. 298, 316 (1995). That is, the petitioner must demonstrate that the habeas court "'cannot have confidence in the outcome of the trial…'" McQuiggan, supra. at 1936 (internal citations omitted).

In urging actual innocence, petitioner relies strongly on Kamienski v. Hendricks, 332 Fed.Appx. 740 (3d Cir.2009)(unpub.) cert. denied 130 S.Ct. 1168 (2010). In the latter case, Kamienski and his codefendant were convicted of felony murder (robbery) and the issue was whether Kamienski who was allegedly unaware of the murderous intent of his codefendant but who did participate in the disposition of the victims' bodies could be convicted of murder. The Court of Appeals wrote:

> There is more than sufficient evidence to allow the jury to conclude that Kamienski was involved in disposing of the … bodies and covering up their murders. However, the state has not identified any direct or circumstantial evidence that would allow a reasonable jury to conclude that Kamienski knew of [co-defendant's] intent to rob and/or murder the [victims]…
>
> [T[he state's murder theory against Kamienski had been based on some abstract notion that the crime of murder is a continuing offense that includes attempts to dispose of the victim's body. That is a theory that is as unique as it is baseless…
>
> Deference to a jury verdict, even under AEDPA's deferential standard, does not allow rank speculation for proof beyond a reasonable doubt…

332 Fed.Appx. at 749.

Pennsylvania's elements of third degree murder are a killing done with legal malice. Commonwealth v. Marquez, 980 A.2d 145, 148 (Pa.Super.2009)("The elements of third degree murder… are a killing done with legal malice.").

In the present case, during deliberation, the jury asked "when does malice have to occur? Before, during, or after the shooting?" (TT.2/17-18/09 at 147), to which defense

6

counsel requested an instruction that "malice afterward doesn't count toward homicide nor before it." (Id.). The court refused this specific request and reinstructed the jury on malice. (TT. 2/17-18/09 at 148-152). Petitioner now argues that as a result of this instruction, the jury might have arrived at a determination of malice as a result of the petitioner having mutilated and disposed of the victim's body, contrary to the Court of Appeal's holding in <u>Kamienski</u> that murder is not a continuing offense.

  At trial petitioner conceded that he had killed Kenney but claimed his actions were performed in self-defense. Specifically, he testified that he and Kenney were arguing about cocaine when the victim removed a gun from Sedlak's desk drawer (TT. 150, *29*)[14]; that Kenney squeezed the trigger but the gun did not fire (TT.151, *41*); that Sedlak tried to escape (TT.151); that Kenney successfully fired the gun (TT.152); that Sedlak tried to retreat but Kenney pursued him (TT.152, *43*); that Kenney fired at Sedlak again (TT.153, *43*); that Sedlak seized another gun and loaded it (TT.154, *48*); that Kenney again aimed at Sedlak who fired back (TT.155-156, *53*); that an acquaintance of Sedlak's advised him not to report the incident to the police (TT.160-161, *76*); that on the advice of his acquaintance Sedlak removed Kenney's car (TT.164); that Sedlak and another friend wrapped the body in a carpet (TT.178); that Sedlak thought the police would never credit his explanation of events (TT.179); that the wrapped body was placed in a friend's pick-up truck (TT.182, *79*); that the friend drove the body from the crime scene (TT.183); that Sedlak threw the guns in the river (TT.184, *66*); that the friend later informed Sedlak that the friend had disposed of the body (TT,185), and that Sedlak did not cut up or skin the body or place it in sulfuric acid (TT.186, *73*).

  In support of his claim of actual innocence, petitioner now contends that "the PCRA court [conceded] that the jury heard evidence that Patrick Kenney had a propensity for violence"; that the PCRA court agreed that "there was a hole in the tile [in Sedlak's salon] that could have been caused by a bullet" and the PCRA court conceded that "Sedlak's testimony was consistent with the physical evidence…"[15] These later findings, the petitioner argues, support his conclusion that when the court answered the jury's request for further instruction on "when does malice have to occur?" its response

---

[14] Transcript references in normal type refer to the testimony of February 12, 2009, while references in italics refer to the testimony of February 13, 2009.
[15] See: Brief of petitioner at p.9.

7

permitted the jury to infer that malice could possibly be inferred from acts committed after the homicide.

Under Pennsylvania law, "when the defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving such a defense beyond a reasonable doubt, Com. v. Rivera, 603 Pa. 340, 355 (2009), and the credibility of such a defense is determined by the jury. Commonwealth v. Bracy, 541 Pa. 322, 332 (1995) ("the jury was free to disbelieve the evidence proffered by Appellant in support of claim of reduced intent and/or self-defense").

The foundation of Sedlak's defense was that he acted in self-defense. In instructing the jury the court stated:

> Self-defense. Justification. The basic rule for self-defense is that a defendant is justified in using force against another person if he reasonably believes he is in immediate danger of unlawful force from that other person and reasonably believes that it is necessary then to use the force which he does to protect himself.
>
> The defendant is entitled to estimate the necessity of the force he employs under the circumstances as he reasonably believes them to be at the time. Be realistic and consider the limitations of human nature when judging the defendant.
>
> There are other requirements for justifying self-defense besides the basic rules when deadly force is used. The additional requirements are more restrictive where the defendant uses deadly force to protect himself than when he uses non deadly force.
>
> Deadly force is simply force under the circumstances in which it is used is readily capable of causing death or serious bodily injury. If the defendant employs deadly force to protect himself, his use of force must meet the following requirements, as well as the basic rule. The defendant must reasonably believe he is in immediate danger of death or serious bodily injury from the other person and also reasonably believe that it is necessary then and there to use the deadly force upon that person to protect himself.
>
> The defendant must be free of all provoking or continuing the difficulties which led to the use of force.
>
> Because the Commonwealth has the burden of disproving the claim of self-defense, you cannot find the defendant guilty of any crime unless you are satisfied that he did not act in justifiable self-defense. More particularly, you cannot find the defendant guilty of any crime unless you're satisfied beyond a reasonable doubt that the defendant did not reasonably believe that he was in immediate danger of death or serious bodily injury and did not reasonably believe that it was

necessary then and there to use that force to protect himself. That is the defense of justification.

There is also evidence from which you may conclude, if you choose, that the defendant disposed of the victim's body. Concealing or destroying the body, actions subsequent to a killing, an attempt to destroy or dispose of evidence, such as the victim's body, are relevant to prove the accused's intent and state of mind and may be considered by you [as] evidence of the defendant's consciousness of guilt. (TT.2/17-18/09 pp. 113- 116).

In Commonwealth v . Dollman, 518 Pa. 86, 91-92 (1988), the Court wrote:

"Actions subsequent to the killing in attempting to destroy or dispose of evidence could have been interpreted by the jury as evidence of consciousness of guilt." Indeed, evidence of disposal of a victim's body is analogous to evidence of an accused's flight or concealment, and this Court has long recognized the relevance and admissibility of the latter types of evidence which advance an inference of guilt…

Although Dollman admitted to having killed her husband, the pivotal issue at trial was her state of mind at the time of the killing. The prosecution attempted to prove that Dollman was guilty of murder of the first degree, while the defense sought to establish that the killing was a justifiable homicide committed in self-defense. For this reason, evidence of Dollman's disposal of the body supplied important proof relative to whether she acted with malice… [I]t is important to note that the baneful manner in which Dollman disposed of her husband's body could very reasonably have been taken by the jury as evidencing … the prosecution's contention that the killing was committed with malice. (internal citations omitted).

Matters of interpretation of state law are performed by the courts of the Commonwealth and are not subject to review by a federal habeas corpus court absent a demonstration of federal constitutional violations. Swarthout v. Cooke, 131 S.Ct. 859 (2011). No such showing is made here. In a similar manner, matters of credibility rest within the province of the jury and not a reviewing court. United States v. John-Baptiste, 747 F.3d 186, 208 (3d Cir) cert. denied 134 S.Ct. 2324 (2014)("conflicting testimony only raised a credibility issue that the jury was free to resolve.").   In the present case, the petitioner testified at trial and the jury rejected his testimony in favor of the prosecution's version of events.

While the petitioner claimed he acted in self-defense, there was ample evidence from which the jury could reject his credibility and conclude that he was guilty beyond a reasonable

9

doubt. For this reason, a threshold issue of actual innocence does not exist since the conviction rested solely on credibility.

Accordingly, the petitioner has failed to demonstrate that his conviction was secured in any manner contrary to determinations of federal law made by the Supreme Court , nor involved an unreasonable application of those determinations. For this reason his petitioner here is without merit and it is recommended that the petition of Bryan Sedlak for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this date. Failure to file timely objections will waive the right to appeal.

Respectfully submitted,
s/ Robert C. Mitchell

Filed: June 30, 2015  United States Magistrate Judge