# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRYAN SEDLAK,<br>        Petitioner,<br><br>v.<br><br>SUPERINTENDENT, SCI HOUTZDALE, et al.,<br>        Respondents. | Civil Action No. 15-504 |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

On June 16, 2015, Magistrate Judge Mitchell filed a Report and Recommendation (R&R) properly recommending the dismissal of Mr. Sedlak's petition for a Writ of Habeas Corpus. The R&R outlined the factual background of the prosecution, calculated that the statute of limitations period had expired, discussed Mr. Sedlak's attempt to surpass the statute of limitations through a showing of actual innocence, and correctly concluded that Mr. Sedlak could not meet the strict requirements of an actual innocence inquiry. However, in light of the substance of the Objections to the R&R, the Response to those Objections, and the Reply in support of the Objections, this Court finds it proper to address such matters in this Memorandum Opinion, as follows.

\*\*\*

On April 4, 2015, Mr. Sedlak filed a Petition for a Writ of Habeas Corpus in this court. His Petition is untimely. 28 U.S.C § 2244(d) imposes a strict one-year statute of limitations period running from the date that a petitioner's judgment became final, either by conclusion of

1

direct state court review or expiration of the time for seeking such review.[1] Under § 2244(d)(2) this period is tolled while a properly filed application for state post-conviction (or other collateral) review is pending. Still, even with such tolling applied, Mr. Sedlak's Petition is untimely:

| | |
|---|---|
| Leave to appeal trial court judgment was denied by the Pennsylvania Supreme Court. | 9/12/2011 |
| 90 day period to file certiorari before Supreme Court expires; statute of limitations begins to run. *See Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). | 12/11/2011 |
| State post-conviction petition filed; statute of limitations tolled. | 8/16/2012 |
| *248 days expired* | |
| Leave to appeal denial of state post-conviction review denied; statute of limitations recommences. | 9/30/2014 |
| Federal habeas petition filed. | 4/16/2015 |
| *197 days expired* | |
| **TOTAL: 445 days expired — 1 year statute of limitations exceeded** | |

There are, however, two ways to extend this one year statute of limitations period (above and beyond the statutory tolling provided by § 2244(d)(2)). First, the statute of limitations may be "equitably tolled" if the petitioner has, (a) been pursuing his rights with reasonable diligence, and (b) some extraordinary circumstance stood in the petitioner's way and prevented his filing of the habeas petition. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). Mr. Sedlak does not assert that the statute of limitations should have been equitably tolled in this case, and it does not appear from the record that he could fulfill such requirements.

Second, a petitioner may avoid the statute of limitations requirement if he or she makes a sufficient showing of "actual innocence" such that rejecting the petition would endorse a "fundamental miscarriage of justice." *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931–34

---

[1] The statute of limitations actually runs from the latest of four starting points: (A) a final judgment; (B) an external barrier being removed; (C) a new, retroactive rule from the Supreme Court; or (D) when a factual predicate of the claim could have been discovered. However, only the (A) final judgment starting point is relevant here.

2

(2013). The actual innocence exception does not "toll" the statute of limitations clock as such, but instead allows a petitioner to circumvent the one year time limit if he can sufficiently show that he is actually innocent of the crime for which he has been charged.[2] Mr. Sedlak asserts that he can make this "actual innocence" showing; respondents contest that assertion.

The "actual innocence" standard outlined in *McQuiggin* "is demanding." *Id.* at 1936. The Court cautioned "that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* at 1928 (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

As explained by the Third Circuit, there is a "two-step inquiry" utilized to assess such actual innocence claims. *Goldblum v. Klem*, 510 F.3d 204, 225 (3d Cir. 2007).[3] "First, a court

---

[2] It is important to keep the gateway "actual innocence" showing analytically separate from the underlying constitutional violation that is alleged in the merits of the *habeas* petition. The two are not one in the same. The merits of a *habeas* petition allege a *constitutional* violation in the state trial court—such as ineffective assistance of counsel, *Miranda* violations, or *Brady* violations. Though these underlying constitutional doctrines hope to achieve substantive accuracy in the trial court, *habeas* is used to correct a violation of the underlying constitutional doctrine, *not* to allege that the trial court was substantively wrong as to guilt or innocence.

A *merits* claim of actual substantive innocence has never been officially recognized by the Supreme Court as a "constitutional violation" that can provide *habeas* relief. *See McQuiggin*, 133 S.Ct. at 1931 ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). The concept was debated in *Herrera v. Collins*, 506 U.S. 390 (1993), but has not been formally sanctioned by the Supreme Court. However, a showing of "actual innocence" *can* allow a petitioner to avoid the statute of limitations bar, so that the petitioner may proceed to a determination of the merits of his alleged procedural/constitutional violation. It is for this reason that the instructions given to the jury below do not bear on Mr. Sedlak's actual innocence argument as to the statute of limitations bar. *See United States v. Tyler*, 732 F.3d 241, 255 (3d Cir. 2013) ("Because 'actual innocence' means factual innocence, not mere legal insufficiency, a showing that the jury was instructed on a legally invalid theory alone does not satisfy the actual innocence standard.") (internal alterations omitted).

[3] *Goldblum*, like other Third Circuit cases cited, discusses the actual innocence inquiry in the procedural default realm rather than the statute of limitations realm. However, the actual innocence inquiry is the same on both fronts. *Schlup v. Delo*, 513 U.S. 298, 329 (1995) and *House v. Bell*, 547 U.S. 518, 126 S.Ct. 2064 (2006) held that "a convincing showing of actual innocence enabled habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims." *McQuiggin*, 133 S.Ct. at 1928. In *McQuiggin*, the court extended this mechanism to the statute of limitations question, holding that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations." *Id.* (noting that courts must make "an assessment of the kind *Schlup* envisioned"). Whether it be to circumvent procedural default or the statute of limitations, a petitioner must

3

must decide 'whether the [petitioner] has presented new reliable evidence . . . not presented at trial.'" *Goldblum*, 510 F.3d at 225 (quoting *Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir.2004), *cert. denied*, 543 U.S. 1070 (2005)). "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.* Second, "only if a petitioner first puts forth new evidence not considered by the jury does a court ask whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* (internal quotations omitted). In sum, "[t]he petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims only if a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 226 (quoting *Schlup*, 513 U.S. at 329).

Mr. Sedlak cannot fulfil the first requirement of this rigorous inquiry because he is unable to present any "new evidence." The "new evidence" step requires a petitioner to present "*new reliable evidence*—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" *Sweger v. Chesney*, 294 F.3d 506, 523 (3d Cir. 2002) (quoting *Schlup*, 513 U.S. at 324) (emphasis in original). Though these three categories "are not an exhaustive list of the types of evidence that can be 'reliable,'" *Munchinski v. Wilson*, 694 F.3d 308, 338 (3d Cir. 2012), the "new evidence" must be evidence that was not "available at trial." *Hubbard*, 378 F.3d at 340.

In an effort to fulfil the "new evidence" requirement, Mr. Sedlak points to various factual

---

meet "the *Schlup* standard," namely, that "it is more likely than not that no reasonable juror would have convicted [the petitioner]." *McQuiggin*, 133 S. Ct. at 1933 (quoting *Schlup*, 513 U.S., at 329). Since *McQuiggin* is a relatively recent case, many of the cases outlining the actual innocence inquiry do so in the procedural default realm.

4

findings made by the PCRA Court[4] in its Opinion denying relief. *See* ECF No. 1 at 24. However, as Mr. Sedlak admits, the PCRA Court denied an evidentiary hearing, and thus, the PCRA Court's review was based entirely on the original trial record. If the PCRA Court did not consider any evidence besides that which was presented to the trial court, it would appear that the PCRA Court's statements, themselves, could not be considered "new evidence." *See Hubbard*, 378 F.3d at 341 (holding that petitioner did not satisfy the actual innocence inquiry where petitioner's new evidence was "nothing more than a repackaging of the record as presented at trial"). *See also, Theus-Williams v. Lizarraga*, 2014 WL 7891587, at *3 (C.D. Cal. Dec. 2, 2014) ("Petitioner's proffered evidence consists only of excerpts from the trial transcript, which plainly do not constitute 'new' evidence.").

In defense of his contention that the PCRA Court's Opinion is "new evidence," Mr. Sedlak asserts that the evidence need not be "newly discovered" so long as it was not *presented* at trial. *See* ECF No. 20 at 2. Though the Seventh Circuit case cited by Mr. Sedlak may follow this rule, in the Third Circuit, the "new evidence" must be evidence that was not *available* at trial. *Goldblum v. Klem*, 510 F.3d 204, 226 (3d Cir. 2007) ("Evidence is not 'new' if it was available at trial, but a petitioner 'merely chose not to present it to the jury.'") (quoting *Hubbard*, 378 F.3d at 340). *See also Teagle v. Diguglielmo*, 336 F. App'x 209, 213 (3d Cir. 2009) ("The other two statements not only present reliability concerns but contain information that is not 'new,' as it was available at trial and defense counsel chose not to present it."); *Hayes v. Wenerowicz*, 2015 WL 1636947, at *6 (W.D. Pa. Apr. 13, 2015) ("Because the alibi evidence was concededly available at the time of the trial, it cannot constitute "new" evidence of actual innocence"). *But see Houck v. Stickman*, 625 F.3d 88, 92 (3d Cir. 2010) (identifying a limited

---

[4] The Pennsylvania Post Conviction Relief Act (PCRA) provides procedures for a first round of state post-conviction collateral review.

5

exception to this rule when "the evidence was not discovered for use at trial because trial counsel was ineffective" and it "is the very evidence that the petitioner claims demonstrates his innocence.").[5] Here, the opinions expressed by the PCRA Court were merely its analyses of the trial court record, and as such, are not "new evidence" at all, let alone "new evidence" that was unavailable at trial.

For Mr. Sedlak's contention to have any force, he would have to be claiming that a PCRA Opinion itself can constitute "new evidence" of actual innocence, even if the Opinion only repackages pieces of the original trial record.[6] He contends that the "new evidence" is not the underlying factual matters restated by the PCRA Court, but the analysis of them by PCRA Court. For example, Mr. Sedlak first posits that it is "new evidence" that "the PCRA Court agreed that the jury heard evidence that [the victim] had a propensity for violence and engaged in violent acts." ECF No. 1 at 24. Of note, Mr. Sedlak's very assertion here that "the jury heard" the underlying substantive evidence demonstrates that it must have been available at trial. The only thing "new" is the PCRA Court's recognition of that reality. The same is true of Mr. Sedlak' other two pieces of "new evidence"—(1) that the PCRA Court agreed that the

---

[5] Indeed, in this case, the Third Circuit explicitly distinguished the Seventh Circuit case cited by petitioner. The Third Circuit noted that the Seventh Circuit case's "definition of 'new' may be too expansive as it seems to go beyond what is needed to remedy the particular problem that that Court identified." *Houck v. Stickman*, 625 F.3d 88, 92 (3d Cir. 2010).

[6] Only where the very existence of a judicial opinion itself is what matters, not the truth of the matters asserted in it, could such an Opinion be "evidence" (for purposes of admission at trial) at all. *See e.g. Castellani v. Scranton Times, L.P.*, 124 A.3d 1299, 1244 (Pa. 2015) ("Appellants seek to introduce the judicial opinions not for their truth, but to establish the Newspaper's actual malice by showing that the Newspaper had reason to doubt the truth of the defamatory statements. Out-of-court statements offered to establish notice to a defendant are not hearsay."). While a court conducting an "actual innocence" inquiry should "consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under the rules of admissibility that would govern at trial," *See Goldblum*, 510 F.3d at 225–26, the above hearsay rule clarifies Mr. Sedlak's actual argument here. His argument is that the "new evidence" is not the underlying factual positions endorsed by the PCRA Court, but the purported endorsement by the PCRA Court itself. Beyond the hearsay issue addressed in *Castellani*, as an evidentiary matter, the Court is hard pressed to identify the relevance of the PCRA Court's Opinion in and of itself to the issues here. In short, the fact that the PCRA Opinion was written or issued does not make any fact of consequence to the Petitioner's claim more or less likely to be true.

6

Commonwealth established that there was a hole in Mr. Sedlak's home that could have been caused by a bullet consistent with Sedlak's version of events, and (2) that the PCRA Court agreed that Mr. Sedlak's testimony was consistent with the physical evidence.

However, a judicial opinion—especially a judicial opinion based only upon the record of the trial court—is not "new evidence" as contemplated by *Schulp* and *McQuiggin*. PCRA Court Opinions are not at all like the type of evidence *Schlup* alluded to when discussing "new evidence" of actual innocence: "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324. As noted above, these categories are not exhaustive, but courts in this Circuit have found evidence much more probative than statements in a PCRA Court opinion to not fulfill the "new evidence" requirement. *See Branthafer v. Glunt*, 2015 WL 5569128, at *18 (M.D. Pa. Sept. 22, 2015) ("[Where] Petitioner asserted that he 'testified at the evidentiary hearing that he was not present at the crime scene and never participated in the murder whatsoever,' ... Petitioner's 'fundamental miscarriage of justice' argument fails because he has not presented 'new reliable evidence'—he presents no exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence."); *Smith v. Gilmore*, 2015 WL 4389292, at *4 (W.D. Pa. July 13, 2015) (holding that evidence "relevant to the chain of custody" of inculpatory evidence "is not 'new' evidence of actual innocence within the meaning of *Schlup*" because the allegedly new chain of custody evidence "would go only to the weight that the jury should accord to the [inculpatory evidence], and not to its admissibility *vel non*."); *Prosdcocimo v. Beard*, 2010 WL 5186641, at *3-4 (W.D. Pa. Nov. 3, 2010) *report and recommendation adopted sub nom. Prosdocimo v. Beard*, 2010 WL 5186618 (W.D. Pa. Dec. 14, 2010) *aff'd sub nom. Prosdocimo v. Sec'y, Pennsylvania Dep't of Corr.*, 458 F. App'x 141 (3d Cir. 2012) (Where "Petitioner presents:

additional reasons why the jury might have discredited the testimony of [adverse witnesses]; additional information about plea bargains they had received or criminal activities in which they had engaged; and additional reasons why they might have given testimony unfavorable to him. Petitioner has failed to demonstrate that his evidence meets the first prong of *Schlup*."). And of particular note here is *Wright v. Kyler*, 2003 WL 22225762, at *4 (E.D. Pa. July 30, 2003) *report and recommendation adopted*, 2003 WL 22939372 (E.D. Pa. Oct. 30, 2003), where the court observed that "the trial court's opinion after trial" (among other allegedly new evidence) does not constitute "newly discovered evidence."

Petitioner posits, "[a]ccording to the State's logic, a new house is not new unless constructed with materials that are [ ] new. A car is not new unless all the parts are new. The State's logic is flawed." ECF No. 20 at 3. This court need not solve Thesus' Paradox[7] to conclude that the statements of the PCRA Court analyzing and interpreting the trial court record do not constitute "new evidence" as that phrase is used for these purposes. Insofar as the allegedly "new evidence" is the underlying factual substance highlighted by the PCRA Court Opinion, that evidence was available at trial and is thus not "new." If, instead, the allegedly "new evidence" is the very existence of the PCRA Court's opinion itself, its existence has no independent probative value, and is not the sort of "new evidence" of actual innocence contemplated by the *Schlup/McQuiggin* actual innocence scheme.

Indeed, considering the PCRA Court's Opinion to be "new evidence" would also cut against the Supreme Court's recognition that actual innocence claims are rarely successful

---

[7] As described by Greek historian Plutarch:
> The ship wherein Theseus and the youth of Athens returned had thirty oars, and was preserved by the Athenians down even to the time of Demetrius Phalereus, for they took away the old planks as they decayed, putting in new and stronger timber in their place, insomuch that this ship became a standing example among the philosophers, for the logical question of things that grow; one side holding that the ship remained the same, and the other contending that it was not the same.

Plutarch, THESEUS, *as translated by* John Dryden.

8

"because the necessary evidence is unavailable in the vast majority of cases." *Hubbard*, 378 F.3d at 339 (citing *Schlup*, 513 U.S. at 324). On the contrary, PCRA Opinions are quite common in Pennsylvania, and are presumably issued by every PCRA Court in every PCRA proceeding (other than, perhaps, summary dismissals). Since habeas petitioners are required to exhaust their claims in state court before proceeding to federal court, 28 U.S.C § 2244(b)–(c), and, "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review," *Commonwealth v. Grant*, 572 Pa. 48, 63 (2002), state PCRA proceedings are all but required for (commonly asserted) ineffective assistance of counsel claims. As such, PCRA Opinions are not "unavailable in the vast majority of cases," *See Hubbard*, 378 F.3d at 339, and thus do not comport with the Supreme Court's understanding of "new evidence" for the actual innocence gateway.

Having failed to present any new evidence, Mr. Sedlak is unable to fulfill the requirements necessary to travel through the actual innocence gateway. He is, therefore, bound by the normal § 2244(d) statute of limitations time restrictions. As such, his claim is time barred.

Finally, no certificate of appealability should issue in this case. Under 28 USC § 2253(c)(1)(A), a petitioner may only appeal "a final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" if a judge "issues a certificate of appealability." Such certificates of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* However, as recognized in *Slack v. McDaniel*, 529 U.S. 473 (2000), when a *habeas* petition is denied on procedural grounds, a certificate of appealability may issue only if (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* (2) jurists of reason would find it debatable whether the district court was correct in its

9

procedural ruling. *Id.* at 484. Jurists of reason would not debate whether the PCRA Court opinion constitutes "new reliable evidence," and thus, jurists of reason would not debate whether this Court's procedural ruling was correct. As such, a certificate of appealability will not issue.

An appropriate Order will issue.

                                                                                            Mark R. Hornak
                                                                                           United States District Judge

Dated: January 28, 2016

cc: All counsel of record